DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KATHLEEN A. RYAN, JOHN D. RYAN,** and **JENNIFER A. RYAN,**
Appellants,

v.

**HSBC BANK USA, NATIONAL ASSOCIATION** as Trustee for **DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2, FAIRFAX VILLAGE HOMEOWNERS ASSOCIATION, INC.,** and **MADISON GREEN MASTER ASSOCIATION, INC.,**
Appellees.

No. 4D2024-2957

[April 8, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Reid Parker Scott, II, Judge; L.T. Case No. 502018CA013901XXXXMB.

Adam Ira Skolnik of Law Office of Adam I. Skolnik, P.A., Deerfield Beach, for appellants.

Patrick G. Broderick and Beth A. Norrow of Greenberg Traurig, P.A., West Palm Beach, for appellee HSBC Bank USA, National Association, etc.

No appearance for appellee Fairfax Village Homeowners Association, Inc.

No appearance for appellee Madison Green Master Association, Inc.

FORST, J.

Appellants Kathleen, John, and Jennifer Ryan ("the Ryans") appeal the trial court's final judgment of foreclosure for Appellee HSBC Bank, etc. ("HSBC"). The Ryans argue the trial court erred in finding HSBC provided sufficient evidence to reestablish a lost promissory note. We agree and reverse.

## Background

The Ryans borrowed money from American Brokers Conduit ("ABC") to buy a home in December 2005 in exchange for a mortgage and promissory note.

This loan was the subject of prior litigation in which nonparty Wells Fargo Bank won a judgment of foreclosure and the Ryans appealed. *See Ryan v. Wells Fargo Bank, N.A.*, 142 So. 3d 974 (Fla. 4th DCA 2014). In that prior case, Wells Fargo introduced into evidence at trial a copy of the note with no endorsement, while the record separately contained a copy of the note with a blank endorsement, which was filed almost two years after the initial complaint. *Id.* at 974–75. We reversed because Wells Fargo "did not demonstrate that the endorsement occurred prior to the filing of the initial complaint" and accordingly "failed to establish standing to bring suit." *Id.* at 975. However, we found "no error on the remaining issues on appeal." *Id.*

The Ryans once again defaulted on the note, and in November 2018, HSBC filed a lawsuit seeking foreclosure. The case went to trial.

The evidence admitted at trial shows that Mortgage Electronic Registration Systems Inc. ("MERS") executed in April 2009, and recorded in May 2009, a written assignment of the mortgage and promissory note to Wells Fargo. This is the last assignment or transfer of the *note* that appears in the trial record. Evidence was admitted at trial showing that the *mortgage alone* was assigned three more times: by MERS as nominee of ABC to HSBC in 2012, by MERS to Wells Fargo in 2013, and by Wells Fargo to HSBC on the same day in 2013. None of these three later assignments purported to transfer the *note*.

HSBC presented additional exhibits, including a June 2009 notice of filing the blank-endorsed note filed in the previous Wells Fargo lawsuit; a June 2018 Lost Note Affidavit ("LNA") written for this litigation by a non-testifying employee; a "compilation of comments log"; a Pooling and Services Agreement ("PSA"); and a mortgage loan schedule. The PSA listed "Deutsche Bank as depositor, Wells Fargo as the master servicer and securities administrator, and [HSBC] as trustee," and had a closing date of June 1, 2006. The LNA stated: "According to the Records attached hereto as Exhibit B, [HSBC] acquired ownership of the Note from [MERS] as nominee for [ABC], its successors and assigns. [MERS] as nominee for [ABC], its successors and assigns was entitled to enforce the Note when loss of possession occurred. The Note was originated by [ABC]." But the "Records attached hereto as Exhibit B" were none other than the 2012

2

assignment of the *mortgage* from MERS to HSBC that fails to mention the *note*.

HSBC presented the testimony of an Ocwen Loan Servicing, LLC loan analyst, who testified that the business records indicate ABC transferred the original physical note to Deutsche Bank. The loan analyst could not confirm when Deutsche Bank had the note. She testified that she did not know if the collateral file which Deutsche Bank provided to her company contained the note. She testified that a June 6, 2018 entry in the comments log said, "collateral file received from custodian with no note. No note received on site." The loan analyst later testified that a February 2014 notation indicates a copy of an LNA from Deutsche Bank was received, but further testified that she did not have a copy of that LNA.

The Ryans' counsel repeatedly pressed the loan analyst to explain who possessed, or had the authority to enforce, the note when it was lost. The loan analyst could not say. When asked if any document showed that GMAC[1] or Ocwen was entitled to enforce the loan when the note was lost, the loan analyst testified, "I don't think I have anything here, not that I can think of off the top of my head, unless I have time to [pore] through the comment log." She then found a notation saying, "loan shell boarded, Ocwen Loan Servicing, LLC, and then it references formerly Res Cap . . . Res Cap and GMAC, they are one [and] the same," but then said the PSA doesn't mention Res Cap and she had no further evidence that GMAC or Res Cap was entitled to enforce the note when it was lost. When asked, "[w]hen Ocwen took over servicing from GMAC, what evidence – there's no evidence that GMAC had authority to enforce the note at that time?," the loan analyst responded, "[a]s far as for the evidence, other than the notation in the system, that's what I have." When asked, "is it your testimony that Deutsche Bank was holding the note at the time it was lost?," the loan analyst responded, "there's just been notations that Deutsche Bank is the custodian, and refer back to them for the collateral, and everything that they've sent us did not, so far, include the original note."

On redirect, the loan analyst testified that there were many attempts to reach out to various parties to find the original note's status, and it was determined that the note was lost. When asked whether, "based on all the information that you have, including in your notes the exhibits, the pooling and servicing agreement, the MLS, it would show that Ocwen, who became

---

[1] The record indicates that GMAC ResCap, Inc., was another loan servicing company like Ocwen.

servicing this loan, would be able to enforce the terms of the note; correct?," the loan analyst responded, "[t]hat's correct."

At the trial's conclusion, the trial court entered final judgment for HSBC. The trial court found the "combination of evidence" which HSBC had presented "to be persuasive in establishing" HSBC's standing to enforce the note by a preponderance of the evidence, including the evidence of the note copy filed in the prior Wells Fargo litigation, the four mortgage assignments, the PSA "naming all the relevant parties and referencing the subject property[,]" the LNA attesting that HSBC acquired ownership of the note from MERS as a nominee of ABC (which it linked to the "established fact that ABC was in possession of the original note" as established by the Wells Fargo litigation), and the loan analyst's testimony that HSBC acquired ownership of the note from an entity entitled to enforce the note. This appeal follows.

## Analysis

"A trial court's determination of whether a party has reestablished a lost note is reviewed for sufficiency of the evidence." *Lewis v. US Bank Nat'l Ass'n*, 298 So. 3d 72, 75 (Fla. 4th DCA 2020) (quoting *Home Outlet, LLC v. U.S. Bank Nat'l Ass'n*, 194 So. 3d 1075, 1077 (Fla. 5th DCA 2016)). "We review the sufficiency of the evidence to prove standing to bring a foreclosure action *de novo*." *Sosa v. U.S. Bank Nat'l Ass'n*, 153 So. 3d 950, 951 (Fla. 4th DCA 2014) (citation omitted).

> A plaintiff "must prove that it had standing to foreclose when it filed the complaint." *Cartwright v. LJL Mortg. Pool, LLC*, 185 So. 3d 614, 615 (Fla. 4th DCA 2016). "A party may establish standing by showing that it was entitled to enforce the note at the time it filed suit." *JPMorgan Chase Bank Nat'l Ass'n v. Pierre*, 215 So. 3d 633, 636 (Fla. 4th DCA 2017) (quoting *U.S. Bank Nat'l Ass'n v. Becker*, 211 So. 3d 142, 144 (Fla. 4th DCA 2017)).

> "A person entitled to enforce an instrument is: (1) [t]he holder of the instrument; (2) [a] nonholder in possession of the instrument who has the rights of a holder; or (3) [a] person not in possession of the instrument who is entitled to enforce the instrument pursuant to s[ections] 673.3091 or [ ] 673.4181(4), [Florida Statutes]." *Id.* (quoting *Becker*, 211 So. 3d at 144) (first and second alterations in original). Standing may also be established "by either an assignment or an equitable transfer of the [note and] mortgage prior to the filing of the

4

complaint." *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012).

*Lewis*, 298 So. 3d at 75. By Florida statute,

> (1) A person not in possession of an instrument is entitled to enforce the instrument if:
>
> (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
>
> (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and
>
> (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

§ 673.3091, Fla. Stat. (2018). "A party seeking to reestablish a lost note may meet the statutory requirements 'either through a lost note affidavit or by testimony from a person with knowledge.'" *Lewis*, 298 So. 3d at 76 (quoting *Sabido v. Bank of N.Y. Mellon*, 241 So. 3d 865, 866 (Fla. 4th DCA 2017)). "The lost note affidavit or testimony need not establish exactly when, how, and by whom the note was lost. It must, however, prove the party seeking reestablishment of the note acquired ownership from a party with the right to enforce the note when lost. At a minimum then, the evidence must establish *who* had the right to enforce the note when it was lost and *how* the party seeking reestablishment obtained ownership." *Id.* (quoting *Sabido*, 241 So. 3d at 867) (citations omitted).

Like the alleged creditors in *Lewis* and *Sabido*, HSBC here failed to establish that it acquired ownership of the note from a party entitled to enforce it at the time it was lost. The evidence admitted at trial established that MERS assigned the note to Wells Fargo and then Wells Fargo filed a blank-endorsed copy of the note in the prior litigation. *No evidence established that Wells Fargo ever transferred ownership of the note to any other party after that point.*

5

Three subsequent transfers of *the mortgage only* occurred, including one "from MERS as nominee of ABC to HSBC," which was the basis for the Ocwen LNA's claim that HSBC acquired ownership of the note from MERS as a nominee of ABC. But as we have explained on numerous occasions, "the mortgage *follows* assignment of the note. The assignment of a mortgage cannot serve as evidence that the note was also transferred, even though a transfer of the note usually will serve as a transfer of the mortgage." *Jelic v. BAC Home Loans Servicing, LP*, 178 So. 3d 523, 525 (Fla. 4th DCA 2015) (citing *Bristol v. Wells Fargo Bank, Nat'l Ass'n*, 137 So. 3d 1130, 1133 (Fla. 4th DCA 2014)). "A bank does not have standing to foreclose where it relies on an assignment of the mortgage only." *Id.* (quoting *Lamb v. Nationstar Mortg., LLC*, 174 So. 3d 1039, 1041 (Fla. 4th DCA 2015)).

To recap, the evidence includes an April 2009 assignment of the note by MERS to Wells Fargo, followed by a notice of filing showing that Wells Fargo possessed the endorsed note and used it in litigation in June 2009. After that, the record shows no more assignments or confirmed sightings of the note. Thus, Wells Fargo is the last party whose ownership of the note can be confirmed, and no admitted evidence supported the conclusion that HSBC acquired ownership of the note, whether directly or indirectly, from Wells Fargo after that.

The crucial flaws in the chain of title are that neither MERS's 2012 assignment of the mortgage to HSBC nor Wells Fargo's 2013 assignment of the mortgage to HSBC mentioned the note. Without either of these links, there is simply no evidence that any party that held the note, or the right to enforce it, ever transferred it to HSBC. Further, the failure of MERS's 2012 assignment to mention the note disproves the claim in the non-testifying employee's LNA that HSBC acquired ownership of the note from MERS.

The loan analyst's testimony did not salvage HSBC's claim. She initially testified that HSBC obtained the note from *Deutsche Bank*, with no explanation of how or when the note was transferred from Wells Fargo to Deutsche Bank. But following further questioning, she revealed that the file which HSBC had received from Deutsche Bank did not contain the note, either. According to a notation admitted at trial and the loan analyst's testimony about that notation, the file instead contained *another LNA*, this time written by Deutsche Bank. This earlier LNA was not admitted at trial and does not appear in the appellate record. Thus, we cannot determine on what basis Deutsche Bank thought it had standing to enforce the note. The loan analyst could not say which party held, or had standing to enforce, the note when it was lost.

6

## Conclusion

HSBC did not provide sufficient evidence to establish "*who* had the right to enforce the note when it was lost and *how* the party seeking reestablishment obtained ownership." *Lewis*, 298 So. 3d at 76 (quoting *Sabido*, 241 So. 3d at 867). Thus, HSBC did not establish that it "acquired ownership from a party with the right to enforce the note when lost." *Id.* (quoting *Sabido*, 241 So. 3d at 867). We therefore reverse the final judgment and remand with instructions for the trial court to enter judgment for the Ryans.

*Reversed and remanded with instructions.*

KLINGENSMITH and SHEPHERD, JJ., concur.

\*       \*       \*

***Not final until disposition of timely-filed motion for rehearing.***